**Thomas KRUSHAUSKAS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (General Motors), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 15, 2012. Decided Oct. 11, 2012.

---

Alfred J. Carlson, Philadelphia, for petitioner.

Audrey J. Copeland, King of Prussia, for respondent General Motors.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge,[1] and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge LEADBETTER.

Thomas Krushauskas (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a Workers' Compensation Judge (WCJ). The WCJ denied Claimant's petition for penalties and suspended Claimant's workers' compensation benefits, determining that Claimant voluntarily retired from the workforce as of July 1, 2006. For the reasons that follow, we affirm.

Claimant sustained a work-related injury to his right shoulder on September 7, 2005, while working as a stock picker for General Motors (Employer). Employer issued a notice of compensation payable (NCP) and Claimant was paid benefits in the amount of $711.59 per week, commencing September 14, 2005. Reproduced Record (R.R.) at 98a.

On March 9, 2008, Claimant filed a penalty petition, alleging that Employer violated the provisions of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4, 2501–2708, by unilaterally suspending Claimant's benefits as of July 1, 2006, without supplemental agreement or judicial order. Employer filed an answer on March 13, 2008, denying the material allegations of Claimant's penalty petition, and the matter was assigned to the WCJ.

The Board summarized the relevant evidence before the WCJ as follows:

In support of [his penalty petition], Claimant testified [before the WCJ on December 8, 2008,] that he injured his right shoulder on July 7, 2005, and continued to work until September 7, 2005. [Employer] acknowledged the work injury and began paying workers' compensation benefits as of September 14, 2005 [until approximately July 1, 2006 (R.R. at 10a)]. [On cross-examination, Claimant testified that] [i]n May 2006, Claimant, as a member of the UAW, was invited to attend Employer's Attrition Plan meeting. After that meeting Claimant signed Form A of the Special Attrition Plan, for receipt of a lump sum of $35,000.00[,[2]] and Form B, which provided inter alia, that Claimant was not under duress, and was not disabled. Form B also contained a general release of all claims against [Employer], including disability pay and benefits.[[3]] De-

1. This case was reassigned to the author on May 17, 2012.

2. Claimant selected Option 1 from Form A of the Special Attrition Plan, which provided:
    Retire effective first of the month following the month my services are no longer required but no later than January 1, 2007 under the Normal or Voluntary provisions of the 2003 GM–UAW Pension Plan. I understand that under this option I will also receive a Thirty–Five Thousand Dollar ($35,000) cash payment, less applicable taxes.
    R.R. at 123a.

3. Form B of the Special Attrition Plan provided, in pertinent part:

spite acknowledging the signing of [the Special Attrition Plan], Claimant insisted that it was not his intention to retire.

In defense, [Employer] introduced into evidence the Special Attrition Plan and presented the [deposition] testimony of its personnel director, Robert Cramer, and its administrative assistant[,] Stacey Pasceri.[4]

Mr. Cramer testified that in the spring of 2006[,] Employer and the [UAW] negotiated a Special Attrition Program or Enhanced Retirement Program as an incentive to reduce the work force. All of the employees both working and non[-]working were invited to attend a meeting where the program was explained. No employee was forced to accept the program. Those who accepted it had 45 days thereafter to revoke acceptance. Claimant did not revoke his acceptance of the plan.

Ms. Pasceri's testimony corroborated Mr. Cramer's and established that Claimant had signed both [Form] A and [Form] B [of the Special Attrition Plan] as of May 11, 2006.

*Id.* at 155a–56a (citations omitted).

The WCJ denied Claimant's penalty petition. Although the WCJ found that Employer violated the Act by unilaterally suspending Claimant's benefits on July 1, 2006, without supplemental agreement, notification of benefit offset, or judicial order, the WCJ concluded that there is no award upon which penalties can be assessed because no past compensation is due Claimant. Specifically, the WCJ stated:

f. The Claimant testified that the Employer sent him a Supplemental Agreement on August 18, 2006, with correspondence signed by Cathy DuPrie. [*See* R.R. at 110a–11a.] The material indicated that if he signed the Supplemental Agreement that his Worker's [sic] Compensation Benefits would be terminated on August 10, 2006. The Claimant did not sign the document.

I have evaluated the benefits and options made available to me and have decided to separate from employment under the option that I have checked on the Special Attrition Plan form for my facility. My separation will be effective at the time called for in the option I have selected....

. . . .

I am satisfied with the terms of this separation and acknowledge I am voluntarily accepting it. This acceptance is not under duress and I am able to work and suffer from no disability that would preclude me from doing my regularly assigned job. As such, I acknowledge that I am not entitled to disability pay or benefits.... I understand that I shall not be eligible for recall to work or reemployment by GM, Delphi, or any of their subsidiaries or any other entity in which the GM has an ownership interest. R.R. at 125a.

4.  At the hearing before the WCJ on December 8, 2008, Claimant's counsel continuously ob-

jected ·on relevance grounds to Employer's entire line of evidence regarding Claimant's alleged voluntary retirement from the workforce, including the testimony of Mr. Cramer and Ms. Pasceri. *See* R.R. at 19a, 22a–24a, 30a, 34a–35a, 40a–41a. Claimant's counsel explained:

There's been no foundation laid that the claimant received an LIBC 756. There was no notification about the offset, which we would be requesting for obvious reasons pursuant to the Court's decision, and no petition pending before the Court other than a penalty petition, which would also in the claimant's position preclude an argument since there has been no suspension or modification petition pending, which precludes the argument that the claimant alleged voluntarily retired from the workforce. [sic]

*Id.* at 41a.

Claimant has not received a workers' compensation check since July 1, 2006.

g. The Claimant did not receive a Notice of Workers' Benefits Offset form from the Employer.

. . . .

2. The Claimant has met his burden of proving that the Employer violated the terms of the [Act], by suspending the Claimant's compensation without a Supplemental Agreement or judicial order. However, as there is no sum of unpaid and past due compensation upon which penalties can be assessed, the Claimant's Petition for Penalties shall be denied.

*Id.* at 146a, 150a (WCJ's Finding of Fact No. 5 and Conclusion of Law No. 2).

In determining that no past compensation is due Claimant, the WCJ found that Claimant voluntarily retired from the workforce when he accepted Employer's Special Attrition Plan. Based upon that finding, the WCJ suspended Claimant's benefits retroactive to July 1, 2006, the date of Employer's unilateral suspension. The WCJ reasoned:

8. Upon review of the conflicting fact witness testimony presented the undersigned finds . . . the following [C]laimant's testimony not credible: The [C]laimant did not decide to retire. He does not feel that he is sufficiently recovered from the work injury to return to his pre-injury job. The Claimant would go back to work for the Employer if it was not for his shoulder. The Claimant retired because of his shoulder. Significant to this determination are the following factors: The Claimant's testimony regarding the issue of whether he retired is inconsistent. The Claimant initially testified that he did not decide to retire. The Claimant subsequently acknowledged that he did retire. The Claimant's testimony regarding his physical condition and reasons for not returning to work is inconsistent with Paragraph five of Form B of the

Employer's special attrition plan. The claimant acknowledged that Form B . . . of the Employer's special attrition plan sets forth that the acceptance is not under duress, and that he is able to work and suffers from no disability that would preclude him from doing his regularly assigned job. The balance of the Claimant's testimony is credible as it is un-contradicted and not inconsistent with the testimonies of the Employer's fact witnesses and the Employer's special attrition plan placed into evidence as Exhibit D–2. The testimonies of the Employer's fact witnesses are credible. Significant to this determination are the following factors: The Employer's fact witnesses testified in a logical and sequential fashion. The testimonies of the Employer's fact witnesses are consistent with Employer's special attrition plan.

9. The Claimant voluntarily retired from the work force. The Claimant received a vested pension and the sum of $35,000 as part of his voluntary retirement. . . . .

1. As the Claimant voluntarily retired from the work force, the Claimant's compensation shall be suspended as of July 1, 2006. Based on his voluntary retirement from the work force, the Claimant shall not be entitled to a reinstatement of compensation, and there is no past due and unpaid compensation to be awarded.

*Id.* at 149a–50a [WCJ's Findings of Fact Nos. 8 and 9 and Conclusion of Law No. 1 (citations omitted) ].

Claimant appealed the WCJ's decision to the Board. Claimant argued that the WCJ erred in suspending his benefits because Employer did not file a suspension petition, or any other petition; that the WCJ erred in finding that Claimant voluntarily retired from the workforce; and that the WCJ erred in failing to reinstate his

benefits retroactive to July 1, 2006—plus statutory interest—and award penalties. Without addressing Claimant's argument regarding the WCJ's authority to suspend benefits in the absence of a suspension petition, the Board affirmed. The Board determined that the WCJ did not err in denying Claimant's penalty petition and in suspending Claimant's benefits retroactive to July 1, 2006, because Claimant voluntarily retired from the workforce. This petition for review followed.

On appeal,[5] Claimant argues that the WCJ erred in suspending his benefits because Employer did not file a suspension petition, or any other petition, *i.e.*, only Claimant's penalty petition was pending before the WCJ. Claimant also argues that the WCJ erred in finding that he voluntarily retired from the workforce. Finally, Claimant asserts that the WCJ erred by failing to make any findings regarding his argument that Employer violated the Act by taking an illegal pension offset. We address these issues in order.

■ It is well-established that "the rules governing pleadings in workers' compensation cases do not mirror the Pennsylvania Rules of Civil Procedure and should be liberally construed." *Brehm v. Workers' Comp. Appeal Bd. (Hygienic Sanitation Co.)*, 782 A.2d 1077, 1081 (Pa.Cmwlth. 2001). "Furthermore, we have never required absolute and unreasonable strictness in pleadings in workers' compensation cases, and, if one party effectively puts the adverse party on notice as to the theory of relief which is sought, the WCJ will be authorized to grant the relief requested." *Id.* at 1081–82 (citations and footnote omitted). "[A] WCJ is empowered under the Act to take appropriate action based upon the evidence presented and [a] [c]laimant

can be placed on notice of the relief sought during the proceedings." *Id.* at 1082 n.16.

■ The general rule in workers' compensation is that if an employer wants to change the character of the claimant's disability, the employer must file a petition specifically requesting the relief sought. *Hutter v. Workmen's Comp. Appeal Bd. (Pittsburgh Aluminum Co.)*, 665 A.2d 554, 556 (Pa.Cmwlth.1995). Notwithstanding, while there is not a case squarely on point with the present matter, this Court has had occasion in the past to address whether a WCJ has authority to grant relief that has not been requested by formal petition. In *Hutter*, we described two categories of cases in which a WCJ can terminate benefits even though the employer has not filed a termination petition:

The first category of cases consist of instances in which a claimant files a claim petition and he/she is granted disability benefits for a closed period of time which are then terminated without a termination petition being filed by the employer. The rationale underlying the termination of disability benefits is that the claimant has the burden of proving the extent of his disability, and a referee may accordingly determine for what period of time such disability existed.

The second category where a termination of benefits is proper without a formal termination petition having been filed involves cases in which the employer files another type of petition but puts the claimant on notice that it is seeking a termination of benefits. A referee may properly consider an employer's petition for modification of benefits as a petition for termination where the claimant would not have been misled by the

5. Based on the issues raised, the scope of this Court's review is limited to determining whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence.

form of the petition, had notice of the relief sought by employer, and had a full and fair opportunity to contest the basis for the employer's assertions.

*Hutter,* 665 A.2d at 556 (citations, footnote and quotations omitted).

Also in *Hutter,* and later in *Frontini v. Workers' Compensation Appeal Board (Parks Moving & Storage),* 702 A.2d 8 (Pa.Cmwlth.1997), this Court sanctioned a third category of cases in which a WCJ may terminate benefits in the absence of a formal termination petition. The claimant in *Hutter* filed a petition to set aside a final receipt, alleging that she had not fully recovered from her work-related injury at the time she signed the final receipt. Relying on the testimony of the claimant's medical expert, the referee granted the claimant's petition, finding that the claimant had not fully recovered at the time she signed the final receipt. The referee further found, however, based on the testimony of the employer's medical expert, that the claimant had fully recovered from her work-related injury as of February 27, 1992—the date that the employer's medical expert examined the claimant. Accordingly, the referee set aside the final receipt, reinstating the claimant's benefits for a closed period, and terminated the claimant's benefits as of February 27, 1992. The claimant appealed, and the Board affirmed. On appeal to this Court, the claimant argued that the referee erred in terminating benefits because the employer failed to file a termination petition. In affirming, we stated:

> Although Employer had filed no formal petition for termination, notice was given to Claimant that it sought a termination of disability benefits, and there certainly was no surprise to Claimant that Employer was seeking termination. Claimant was provided with the deposition of Employer's medical expert, and

the deposition emphatically stated that Claimant was no longer injured as of . . . the date the expert examined her. This clearly notified Claimant that Employer was seeking a termination. There was, therefore, no prejudice to Claimant, nor denial of an opportunity to defend against the termination request.

*Hutter,* 665 A.2d at 557.

Likewise, the claimant in *Frontini* filed a petition to set aside a final receipt, alleging that he did not knowingly sign the final receipt and that he had not fully recovered from his work-related injury. The WCJ found that the claimant did not knowingly execute a final receipt and that the claimant had not fully recovered from his work-related injury at the time he mistakenly signed the final receipt. However, the WCJ further found that the claimant had fully recovered from his work-related injury as of May 23, 1994—the date that the employer's medical expert examined the claimant. Accordingly, the WCJ set aside the final receipt, reinstating the claimant's benefits for a closed period, and terminated the claimant's benefits as of May 23, 1994. The claimant appealed, and the Board affirmed. On appeal to this Court, the claimant argued that the WCJ erred in terminating his benefits because the employer had not filed a petition requesting termination. In affirming, we stated:

> Here, the Employer in its answer to claimant's set aside petition expressly denied that claimant was not fully recovered from his work-related injury and denied that claimant had not been released to work by examining physicians. Claimant was therefore on notice that Employer intended to show that the status quo existed—that is, that the termination of benefits which had been effectuated by claimant's signing of a final receipt was warranted by the evidence.

Claimant's set aside petition was filed April 4, 1994. Claimant was examined by Employer's medical expert May 23, 1994. That expert's March 9, 1995 deposition and his attached report, in which he stated that he found no objective symptoms and no reason claimant could not return to work, was available to the claimant. The expert was cross-examined in that deposition by claimant's counsel....

. . . .

[T]he underlying rationale for not allowing a referee to grant relief which an employer had not requested is that doing so is prejudicial to the claimant, who, never having been put on notice that the employer seeks such relief, has no opportunity to defend against it. Certainly no prejudice caused by lack of notice was suffered by Claimant here, where benefits had already been terminated by the signing, albeit mistaken, of a final receipt prior to the filing of a set aside petition; where the answer to the set aside petition alleged facts which, if proved, would entitle Employer to termination; and where Claimant was aware that Employer intended to adduce expert and lay witness testimony to prove that claimant no longer suffered disability from his work-related injury.

*Frontini,* 702 A.2d at 12–13 (citations and quotations omitted). We went on to reason that, because the claimant's benefits had already been terminated by the final receipt, albeit mistakenly, it would have been counter-intuitive for the employer to file a termination petition in the first place. *Id.* at 13.

■ The key import of *Frontini* and *Hutter,* and the cases cited therein, is that a WCJ has authority to suspend/terminate a claimant's benefits in the absence of a formal petition where doing so would not be prejudicial to the claimant, *i.e.,* the claimant is put on notice that a suspension/termination is possible and is given the opportunity to defend against it. Whether the claimant has adequate notice depends on the totality of the circumstances of a particular case. This includes the procedural history, the factual history, the nature of the claimant's petition, and the nature of the employer's response to the claimant's petition. In *Frontini* and *Hutter,* the fact that both a petition to set aside a final receipt and a termination generally concern whether the claimant has fully recovered from the work-related injury was critical to determining that the claimant had notice that a termination was possible, but it was not dispositive in itself. Rather, it was also important that the claimant's benefits had already been terminated by a final receipt, that the employer denied all the material allegations of the claimant's petition, and that the employer presented medical evidence establishing that the claimant had fully recovered from the work-related injury on a date after execution of the final receipt.[6]

6. *Frontini* and *Hutter* are not so restrictive as to require that a claimant's petition involve the same ultimate legal issue as a suspension/termination in order for a WCJ to grant an employer a suspension/termination absent a formal petition requesting such relief. As described above, both *Frontini* and *Hutter* involved a petition to set aside a final receipt. In a petition to set aside a final receipt, the issue is whether the claimant had fully recovered from the work-related injury at the time the final receipt was executed. An employer's defense to such an action, therefore, is that the claimant had fully recovered at the time of execution. If the employer's defense is successful, the remedy is a denial of the claimant's petition, not a termination. The employers in *Frontini* and *Hutter,* however, did not argue that the claimant had fully recovered from the work-related injury *at the time* the final receipt was signed; rather, the employers presented medical evidence establish-

■ Under the specific facts of this case, Claimant clearly had notice that a suspension was possible, and Claimant was given an opportunity to defend against it. First, Claimant's penalty petition was based on Employer's unilateral suspension of his benefits. Like *Frontini,* because Employer already ceased paying Claimant's benefits, albeit improperly, and because Employer denied the material allegations of Claimant's penalty petition, it was clear that Employer was seeking a continuation of that suspension. Furthermore, Employer questioned Claimant extensively at the December 8, 2008 WCJ hearing regarding his voluntary retirement from the workforce. Although Claimant objected, he objected on the basis of relevance, not surprise. Claimant then went on to present his own testimony on redirect examination regarding the circumstances of his retirement. R.R. at 36a–38a. Finally, the WCJ did not close the record in this matter at the end of the December 8, 2008 hearing; instead, the WCJ granted Employer leave to conduct depositions of two of its employees for purposes of establishing the circumstances surrounding Claimant's acceptance of Employer's Special Attrition Plan (pursuant to which Claimant allegedly "retired"), at which Claimant was given the opportunity to cross-examine Employer's witnesses. Even though it was abundantly clear that Employer sought to demonstrate its entitlement to a suspension based on Claimant's voluntary retirement from the workforce, Claimant made no attempt to submit

additional evidence. This is not a situation where the WCJ *sua sponte* suspended Claimant's benefits after the close of the record. *See Coover v. Workmen's Comp. Appeal Bd. (Browning–Ferris Indus. of Delaware Valley),* 140 Pa.Cmwlth.16, 591 A.2d 347 (1991); *Boehm v. Workmen's Comp. Appeal Bd. (United Parcel Serv.),* 133 Pa.Cmwlth. 455, 576 A.2d 1163 (1990), *superseded on other grounds by statute.* Accordingly, the WCJ did not err in treating Employer's response to Claimant's penalty petition as a request for suspension. Because strictness of pleadings is not required in workers' compensation cases, and in the interest of judicial economy, the WCJ was empowered to take appropriate action based on the evidence presented.

■ Having determined that the WCJ had authority to suspend Claimant's benefits, we must now determine whether the WCJ properly exercised that authority. Pursuant to Section 306(b)(2) of the Act, 77 P.S. § 512(2), and *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987), an employer seeking to suspend a claimant's benefits must meet the following requirements:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a

ing that the claimant had fully recovered from the work-related injury *after* execution of the final receipt—hence, the WCJ terminated the claimant's benefits, as opposed to denying the claimant's petition. In other words, although a petition to set aside a final receipt and a termination both involve a determination as to whether the claimant had fully recovered from the work-related injury, whether the claimant had fully recovered from the work-

related injury *after* execution of the final receipt was irrelevant in determining whether the claimant had fully recovered from the work-related injury *at the time* the final receipt was executed. The fact that both a petition to set aside a final receipt and a termination involve a similar inquiry, however, was an important factor in determining that the claimant was put on notice that a termination was possible.

then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3.  The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4.  If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380. Notwithstanding, an employer need not prove the availability of suitable work when the employer establishes, under the totality of the circumstances, that the claimant has voluntarily retired from the workforce. *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Robinson)*, 4 A.3d 1130, 1138 (Pa.Cmwlth. 2010), *appeal granted*, 610 Pa. 1, 17 A.3d 917 (2011). Under this Court's decision in *Robinson*, where a claimant accepts a *retirement* pension, that claimant is presumed to have voluntarily retired from the work force, and the employer is entitled to a suspension unless the claimant can show that he is seeking employment or that the work-related injury forced him to retire. *Id.* at 1137–38.

Here, the WCJ found that Claimant accepted a retirement pension. That finding was not challenged on appeal. Because Claimant accepted a retirement pension, the burden shifted to Claimant to demonstrate that he is seeking employment or that his work-related injury forced him to retire. Claimant testified that he was not seeking employment, *id.* at 33a, and although Claimant testified that he retired because of his work-related injury, *id.* at

36a, the WCJ rejected this testimony as not credible. *Id* at 149a. "The law is well settled that the WCJ, as fact finder, has exclusive power over questions of credibility and evidentiary weight, that the WCJ may reject the testimony of any witness in whole or in part, and that such determinations are not subject to appellate review." *Potere v. Workers' Comp. Appeal Bd. (Kemcorp)*, 21 A.3d 684, 690 (Pa.Cmwlth. 2011). Accordingly, the WCJ did not err in suspending Claimant's benefits based upon Claimant's voluntary retirement from the workforce.

Finally, Claimant argues that the WCJ erred in denying his penalty petition because Employer violated the Act by taking an illegal pension offset against his workers' compensation benefits without having filed the appropriate Bureau documentation, specifically Form LIBC–761. However, the WCJ did not find that Employer took an offset against Claimant's pension. Rather, he found that Claimant voluntarily retired from the work force and thus was not entitled to benefits after his retirement, the same basis upon which he suspended benefits. He further found that, although Employer violated the Act by failing to follow the proper procedures (*i.e.*, because no supplemental agreement, final receipt, or order was obtained before payments ceased), no penalties could be computed because no benefits were due. This was also the rationale of the Board. Accordingly, there is no basis upon which we can hold that penalties should be awarded based on an illegal pension offset.[7]

---

7.  In one sentence in his argument alleging an illegal pension offset, Claimant asserts that because the suspension order was procedurally improper (the first issue discussed above, that suspension could not be ordered in the context of solely a penalty petition), benefits continued to be owed after his retirement. This statement is not further developed and

appears to be intended to explain why he believes that an offset was taken against benefits due. Even if considered out of context as a separate argument, it must fail because we have rejected its underlying premise. Notably, Claimant does not anywhere argue that even if his benefits were properly suspended as of his retirement date, there was nonethe-

For the foregoing reasons, the order of the Board is affirmed.

## ORDER

AND NOW, this 11th day of October, 2012, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY President Judge PELLEGRINI.

I respectfully dissent from the majority opinion holding that in a proceeding on Claimant's penalty petition in which Employer defends its unilateral suspension of benefits because the Claimant didn't deserve the compensation, a defense akin by a murderer that the victim deserved to die, that the WCJ can suspend benefits without a suspension petition being filed. In doing so, the majority holds that as long as a party has notice of what is being sought, the WCJ has the right to decide anything in the context of any proceeding without filing anything. Because I do not believe the compensation system should be so free-form, I would hold that a penalty petition is just that—a penalty petition and benefits cannot be suspended unless the employer files a properly filed suspension petition.

Claimant suffered a rotator cuff tear while employed as a stock picker for Employer in 2005 and began receiving workers' compensation benefits. On May 11, 2006, Claimant signed an Enhanced Retirement Program with Employer voluntarily terminating his employment. In 2008, Claimant filed a penalty petition alleging that Employer violated the provisions of the Workers' Compensation Act [1] (Act) by unilaterally suspending his benefits as of July 1, 2006, without a supplemental agreement or a judicial order. Employer filed an answer denying the material allegations and arguing that Claimant had withdrawn from the workforce because he had taken voluntary retirement.

The WCJ found that Employer violated the Act by unilaterally suspending Claimant's benefits without a supplemental agreement, notification of benefit offset or a judicial order, but denied the penalty petition because no award upon which penalties could be assessed was due as Claimant had voluntarily withdrawn from the workforce. Claimant appealed to the Board arguing that the WCJ erred in suspending benefits because Employer did not file a suspension petition or any other petition as well as finding that he voluntarily retired from the workforce. Claimant also contended that the WCJ erred in not awarding penalties for unlawfully suspending benefits. Without addressing Claimant's argument regarding the WCJ's authority to suspend benefits in the absence of a suspension petition, the Board affirmed the denial of Claimant's penalty petition and suspended Claimant's benefits because Claimant voluntarily retired from the workforce. This appeal by Claimant followed with Claimant raising the same issues he raised before the Board.

On appeal, the majority holds that the WCJ had the authority to suspend Claimant's benefits even though the only petition before the WCJ was Claimant's penalty petition. Unlike the majority, I would not

---

less a continuing obligation to pay benefits until the date of the suspension order because Employer had not followed the statutory procedures. Therefore, we will not address this question, nor the collateral question of whether if past benefits are awarded as a sanction in this situation, they are subject to discretionary consideration of mitigating factors.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

sanction Employer's violation of the Act by permitting suspension of benefits in a penalty petition. I would remand for the calculation of benefits owed because of the illegal suspension and award of penalties.

The majority acknowledges that if an employer wants to change the character of a claimant's disability, the employer must file a petition specifically requesting the relief sought. *Hutter v. Workmen's Compensation Appeal Board (Pittsburgh Aluminum Co.)*, 665 A.2d 554 (Pa.Cmwlth. 1995). It goes on to state that in that case, this Court has described two categories of cases in which a WCJ can terminate benefits even though the employer has not filed a termination petition:

> The first category of cases consists of instances in which a claimant files a claim petition and he/she is granted disability benefits for a closed period of time which are then terminated without a termination petition being filed by the employer. The rationale underlying the termination of disability benefits is that the claimant has the burden of proving the extent of his disability, and a referee may accordingly determine for what period of time such disability existed.

> The second category where a termination of benefits is proper without a formal termination petition having been filed involves cases in which the employer files another type of petition but puts the claimant on notice that it is seeking a termination of benefits. A referee may properly consider an employer's petition for modification of benefits as a petition for termination where the claimant would not have been misled by the form of the petition, had notice of the relief sought by employer, and had a full and fair opportunity to contest the basis for the employer's assertions.

*Hutter*, 665 A.2d at 556 (citations and quotations omitted.)

The majority cites *Frontini v. Workmen's Compensation Appeal Board (Parks Moving & Storage)*, 702 A.2d 8 (Pa. Cmwlth.1997), for a third category of cases in which a WCJ may grant relief which has not been requested by formal petition. In *Frontini*, the question of the claimant's disability was placed at issue by the filing of a petition to set aside the final receipt because it required the claimant to prove by sufficient competent, credible evidence that all disability related to his/her work-related injury had not ceased at the time he/she signed the final receipt, putting the extent of the claimant's disability status squarely before the WCJ. *See* Section 434 of the Act, 77 P.S. § 1001. "The key import of *Frontini* and *Hutter*, and the cases cited therein, is that a WCJ has authority to suspend/terminate a claimant's benefits in the absence of a formal petition where doing so would not be prejudicial to the claimant, *i.e.*, the claimant is put on notice that a suspension/termination is possible and is given the opportunity to defend against it." *Thomas Krushauskas v. Workers' Comp. Appeal Board*, 56 A.3d 64, 71 (Pa.Cmwlth.2012).

Although the majority concludes that the WCJ was empowered to treat the penalty petition as a suspension petition as well because "[u]nder the specific facts of this case, Claimant clearly had notice that a suspension was possible, and Claimant was given an opportunity to defend against it" 56 A.3d at 72, the question raised here is whether a defense raised in opposition to a penalty petition for an admitted violation of the Act falls outside the general rule that if an employer wants to change the character of the disability, it must file a petition specifically requesting the relief sought. In the alternative, does such action fall within one of the exceptions mentioned above merely because a claimant is put on notice that the employer is going to

defend on the basis that no penalty can be imposed, even though the employer violated the Act?

The common thread running through these three exceptions to the general rule is that the nature and extent of a claimant's injuries has to be resolved in order to make a determination on the issue that was presented in the petition. In other words, while there was no formal termination petition filed, termination of benefits was an ancillary remedy to the petition filed. In a penalty petition, however, the nature and extent of a claimant's injuries is not at issue—the only issue is whether an employer has violated the Act. Whether benefits should have been or could have been suspended at the time the employer violated the Act are not defenses to the imposition of penalties and are irrelevant. Because a penalty petition does not involve the nature and extent of a claimant's injuries, suspension of benefits is not placed at issue in a penalty petition, and the general rule applies that an employer who wants to change the character of the disability must file the proper petition specifically requesting the specific relief sought. Consequently, I disagree with the majority that the WCJ did not err in treating Employer's response to Claimant's penalty petition as a request for suspension.

The majority then goes on to consider whether the WCJ properly suspended Claimant's benefits based upon his voluntary retirement from the workforce and concludes that the WCJ did not err in suspending Claimant's benefits because the WCJ found that Claimant accepted a retirement pension. Because a suspension petition had not been filed and such a defense is not cognizable in a penalty petition, benefits should not have been suspended, and because benefits should not have been suspended, benefits should have continued, and because they should have continued, compensation was due and owing and penalties are awardable.

The net result of the majority holding that the general rule that an employer must file a petition specifically requesting the relief sought is no more—the employer or anyone in any old proceeding can ask for anything they want without filing anything. Accordingly, because I would reverse the Board's order to the extent that it affirmed the WCJ's suspension of Claimant's benefits, I respectfully dissent.

Judge McCULLOUGH joins in this dissenting opinion.