IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cardone Industries, : 
              Petitioner : 
                     : No. 791 C.D. 2015 
        v. : 
                     : Submitted: October 30, 2015 
Workers' Compensation Appeal : 
Board (Tiko), : 
             Respondent : 

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                   FILED: February 8, 2016

        Cardone Industries (Employer) petitions for review of the April 13, 2015 decision of the Workers' Compensation Appeal Board (Board), affirming the order of a workers' compensation judge (WCJ) that denied Employer's termination and review petitions and granted the reinstatement petition of Diana Tiko (Claimant).

## Facts and Procedural History

        Claimant worked for Employer as a brake caliper assembler, working with a team of three other workers and an expectation that the team would assemble

---

     [1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

900 units per day. In the course and scope of her employment on May 20, 2010, Claimant sustained an injury to her arm/shoulder and her low back. The nature of her arm/shoulder injury is a matter of dispute. Claimant alleges that she sustained injuries to her right arm and shoulder; whereas Employer alleges that Claimant's injuries were to her left arm and shoulder. Nevertheless, Employer issued a medical-only notice of temporary compensation payable, which later converted to a medical-only notice of compensation payable (NCP), recognizing only a low back strain.

Following her injury, Claimant's supervisor sent her to an on-site nurse. However, due to Claimant's pain, she was referred for treatment to Temple University Hospital (Temple). Claimant does not speak English very well and she was accompanied to Temple and subsequent medical visits by a relative, Employer's Chaplain, Martin Katro, who translated for her. Following an examination, a physician at Temple released Claimant to return to work with several restrictions, including no lifting over five pounds, no pushing/pulling over five pounds, and no reaching above her shoulder. Claimant never missed work but did return to a light-duty job cleaning floors and fans. On May 25, 2010, Claimant was released to return to her pre-injury job without any restrictions. In June 2010, Claimant was transferred to the water pump unit, which was a lighter-duty job than her brake caliper assembly position. As of August 23, 2010, Claimant utilized two weeks of leave under the Family Medical and Leave Act (FMLA)[2] and vacation time to visit her sick mother in Albania. Upon her return to work on September 21, 2010, she was advised that she had been laid off for economic reasons.[3]

---

[2] 29 U.S.C. §§2601-2654.

[3] Claimant received six weeks of separation pay, followed by unemployment compensation.

On May 24, 2011, Claimant filed a penalty petition, alleging that Employer violated the Pennsylvania Workers' Compensation Act (Act)[4] by failing to reinstate indemnity benefits following the elimination of her job. Claimant later amended the penalty petition to a reinstatement petition, alleging that total disability benefits should have been reinstated as of August 23, 2010. Employer filed an answer denying this allegation.

On November 14, 2011, Employer filed a review petition seeking to change the description of Claimant's injury on the medical-only NCP from low back strain to a left elbow injury. Employer asserted the initial acceptance of a low back strain injury was due to a typographical error and that the medical records reflect that Claimant reported and was treated for a left elbow injury. On this same day, Employer filed a termination petition alleging that Claimant had fully recovered from her work injury as of July 20, 2011, the date of an independent medical examination (IME) conducted by Todd Kelman, D.O. Claimant filed answers denying the allegations of each petition. The petitions were consolidated for purposes of hearings before the WCJ.

Claimant testified as to the facts described above. Claimant specifically denied ever reporting or receiving treatment for pain in her left arm/shoulder. (WCJ's Findings of Fact Nos. 1b, 2a.) Claimant presented the deposition testimony of Hekuran Abedini, a former co-worker. Abedini testified that Claimant complained to him of pain in her right arm. On cross-examination, Abedini acknowledged that he did not work with Claimant in calipers or see her work station there. Rather, he stated that he worked with Claimant in water pumps for approximately two and one-half years in late 2004, prior to her transfer to calipers. Abedini also stated that he was

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

laid off in March 2011 and filed a human relations complaint against Employer, but denied that such filing had any effect on his testimony. (WCJ's Findings of Fact Nos. 3a-b.)

Claimant further presented the deposition testimony of Frederick S. Lieberman, M.D., an orthopedic surgeon who first examined Claimant on July 15, 2011, with translation assistance provided by Claimant's daughter. Dr. Lieberman recalled a history provided by Claimant of right arm and low back injuries sustained in the course of her employment on May 20, 2010, all of which continued at the time of the examination. He stated that an MRI conducted on October 19, 2010, revealed a midline protrusion and small annular tear in the posterior aspect of L4-5, as well as a small protrusion at L5-S1. His exam further revealed evidence of lateral epicondylitis and common extensor tendonitis in Claimant's right elbow and a partial thickness tear in her right shoulder. Dr. Lieberman ordered additional testing, including MRIs of Claimant's right shoulder and her cervical, thoracic, and lumbosacral spine. He noted that these MRIs showed disc herniations at L5-S1 and C5-6, protrusions at L4-5 and C4-5, and a disc bulge at C-7. Dr. Lieberman testified that EMG studies confirmed multilevel cervical radiculopathy on the right at C-4 through T-1 and carpal tunnel syndrome more prevalent on the right. With the exception of the carpal tunnel syndrome, Dr. Lieberman opined that Claimant's condition was directly related to her work activities for Employer. (WCJ's Findings of Fact Nos. 4a-e.)

On cross-examination, Dr. Lieberman acknowledged that multiple forms, including, *inter alia,* Employer's May 20, 2010 work status form and occupational health services referral form, as well as Temple's medical report form, an x-ray report from Temple, progress notes from the doctor at Temple, and work

4

release status form, all describe left arm/shoulder complaints and treatment. He also acknowledged that records from a chiropractor treating Claimant's back injury reference pain on October 15, 2010, resulting from an incident in Claimant's shower at home. (WCJ's Findings of Fact Nos. 4f-g.)

Employer presented the testimony of Delmalyn LaBrake, an occupational health nurse with Employer for fourteen years. LaBrake testified that she saw Claimant on May 20, 2010, for complaints in her left shoulder, elbow, hand, and fingers, and referred her for treatment to Dr. Evelyn Balogun at Temple Occupation Health. LaBrake stated that Dr. Balogun saw Claimant a second time on May 25, 2010, in her office at Employer's facility, again examining Claimant's left arm. LaBrake noted that Chaplain Katro provided translation at this visit and that Dr. Balogun released Claimant to return to her pre-injury job that day. LaBrake then identified many of the documents referenced in Dr. Lieberman's deposition, all of which discuss a left arm injury. (WCJ's Findings of Fact Nos. 5a-d.)

Employer also presented the testimony of Chaplain Katro, who worked for Employer for fourteen years and was a distant cousin of Claimant. Chaplain Katro testified that he accompanied Claimant to both visits with Dr. Balogun and acted as a translator. He stated that he was one-hundred percent certain that Claimant complained of pain in her left arm in May 2010, and that she never mentioned neck pain, low back pain, or right arm pain to him. (WCJ's Findings of Fact Nos. 6a-f.)

Finally, Employer presented the deposition testimony of Todd Marc Kelman, D.O., a board-certified orthopedic surgeon who conducted the July 20, 2011 IME of Claimant. Dr. Kelman testified that Claimant complained of pain in her neck, low back, and right arm, including her shoulder and elbow, and numbness in her fingers. He stated that Claimant denied having any left arm symptoms. While the

October 2010 MRI showed small protrusions at L4-5 and L5-S1, he described these findings as not clinically significant. With respect to a reported disc herniation at L5-S1 following an October 2011 lumbar MRI, he noted that the report makes no mention of indenting or impinging on the thecal sac or a nerve root. Regarding the disc herniation at C5-6, he noted that such a finding did not correlate clinically to Claimant's examination, explaining that Claimant complained of numbness in her middle three fingers. According to Dr. Kelman, such a herniation would result in numbness in the area of Claimant's thumb and the space between her thumb and her index finger. (WCJ's Findings of Fact Nos. 7a-g.)

Dr. Kelman testified that Claimant's 2010 medical records referenced complaints and treatment solely to her left arm. He stated that Claimant advised him that her back pain did not start until September 2010, noting the chiropractor's report that such pain started at home in Claimant's shower on October 15, 2010. He opined that the only diagnosis that could have been partially corroborated was tendonitis over the right forearm, which he could not relate to her work injury because her medical records lacked any right-sided complaints. Given Claimant's lack of any left-sided complaints during his IME, Dr. Kelman further opined that Claimant had fully recovered from her work injury. (WCJ's Findings of Fact Nos. 7h-i.)

On cross-examination, Dr. Kelman reiterated that he diagnosed Claimant as suffering from right forearm and shoulder tendonitis, as well as low back pain with radiculopathy. He noted that he would only release Claimant to perform sedentary work, with restrictions on repetitive manipulation and lifting over ten pounds. He further acknowledged that Claimant described her pre-injury job as involving repetitive use of her right arm and that it would be more likely for a person doing

6

repetitive work to develop tendonitis on the dominant side. (WCJ's Finding of Fact No. 7j.)

The WCJ ultimately granted Claimant's reinstatement petition, but denied Employer's review and termination petitions. The WCJ accepted the testimony of Claimant as credible. The WCJ also accepted as credible that portion of Dr. Kelman's testimony wherein he stated that Claimant's complaints were related solely to her right arm/shoulder. The WCJ rejected as not credible that portion of Dr. Kelman's testimony wherein he opined that Claimant had fully recovered. The WCJ further rejected the testimony of LaBrake, Chaplain Katro, and Dr. Lieberman as not credible. The WCJ concluded that Claimant had established that, through no fault of her own, her earning power was once again adversely affected by disability from her May 20, 2010 work injury, thereby entitling her to total disability benefits as of August 23, 2010. The WCJ also concluded that the description of the injury on the NCP should be amended to right forearm and shoulder tendonitis and that Employer was only responsible for medical bills related to those conditions. Employer appealed to the Board, which affirmed the WCJ's decision. Employer then filed a petition for review with this Court.

## Discussion

### Reasoned Decision/Capricious Disregard of Evidence

On appeal,[5] Employer first argues that the WCJ erred in failing to explain why he rejected and/or discredited the work and medical records referencing

---

[5] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact were supported by substantial evidence. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006). In addition, review for capricious disregard of material, **(Footnote continued on next page…)**

7

a left-arm injury. More specifically, Employer argues that the WCJ's failure to address these records renders his decision unreasoned and constitutes a capricious disregard of the evidence. We agree.

Section 422(a) of the Act requires the WCJ to issue a reasoned decision, stating in relevant part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834. The purpose of this section is to ensure that "a legally erroneous basis for a finding will not lie undiscovered" and that "such legal error will be evident and can be corrected on appeal." *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086, 1088-89 (Pa. Cmwlth. 1998). A decision

---

**(continued…)**

competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). Capricious disregard of the evidence exists "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Station Square Gaming L.P. v. Pennsylvania Gaming Control Board*, 927 A.2d 232, 237 (Pa. 2007).

is reasoned for purposes of section 422(a) if it allows for adequate appellate review without further elucidation. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

In the present case, there were numerous work and medical report forms submitted into evidence, including a work status form and an occupational health services referral form completed by Employer, as well as a medical report form from Temple, an x-ray report from Temple, progress notes from the doctor at Temple, and a work release status form completed by this same doctor, all of which describe Claimant's complaints and treatment as relating to her left shoulder, elbow, and hand. These forms were acknowledged by both medical experts in their respective depositions. However, in his decision, the WCJ merely references this documentation in his findings summarizing the testimony of Dr. Lieberman and LaBrake. The WCJ fails to provide any explanation as to why he ostensibly rejected this evidence, which is especially relevant in this case where the specific nature of Claimant's work injury, i.e., left arm versus right arm, was the central issue in dispute.[6]

While Claimant describes this documentation in her brief as merely consisting of "three or four pieces of paper [which] defense counsel refers to as 'every' medical record," (Claimant's brief at 16), we note that Claimant received limited medical treatment after her May 20, 2010 work injury. Indeed, the record reveals that Claimant's original medical treatment merely consisted of a visit to

---

[6] Contrary to the dissent, the WCJ's findings rejecting the testimony of LaBrake and Chaplain Katro as not credible do not sufficiently address the aforementioned work and medical report forms. At the very most, these findings reflect the confusion in this case concerning which arm Claimant injured. Indeed, the dissent concedes "the varying descriptions of the injury in these forms. . . ." (Slip op. at 6.) Further, the dissent recognizes that these forms consistently reference injuries to Claimant's left arm and hand, thereby necessitating further findings by the WCJ.

9

Employer's on-site nurse, an examination at Temple by Dr. Balogun, and a follow-up visit with Dr. Balogun at Employer's facility on May 25, 2010, at which time Claimant was released to return to her pre-injury job. Claimant did not seek additional medical treatment until July 2011, more than one year after her work injury and approximately ten months after her layoff, when she visited Dr. Lieberman.

Because the WCJ never addressed the aforementioned records in his decision, we must conclude that his decision was not reasoned and he capriciously disregarded this evidence. As a result, the matter must be remanded to the WCJ for further findings addressing these records.

### Substantial Evidence/Internally Inconsistent

Next, Employer argues that the WCJ's decision was not supported by substantial evidence and that his credibility determinations and ultimate conclusion were internally inconsistent. We agree.

The WCJ accepted the deposition testimony of Employer's medical expert, Dr. Kelman, as credible and persuasive, and relied on this testimony to support his finding and conclusion that Claimant's work injury consisted of right forearm and shoulder tendinitis. However, it is not clear that Dr. Kelman's testimony supports either. While the WCJ correctly summarized Dr. Kelman's diagnosis of Claimant's condition, the WCJ neglected Dr. Kelman's opinion that he could not relate this diagnosis to Claimant's May 20, 2010 work injury, primarily because Claimant's original medical records did not reference any right-sided complaints. Indeed, the WCJ states in Finding of Fact No. 7(i) that Dr. Kelman "did not relate this [diagnosis] to the May 20, 2010 work injury because there was no record that [Claimant] had right sided complaints." To the contrary, the WCJ notes in this same

10

finding that "Claimant's records did document a diagnosis of left elbow tendinitis" and that Claimant "had a left sided exam." *Id.* We concluded above that a remand was necessary for the WCJ to address these very records. In the course of this remand, we believe that the WCJ should reconsider the deposition testimony of Dr. Kelman in its entirety.

## Burden of Proof – Reinstatement or Claim Petition

Finally, Employer argues that the WCJ's finding that Claimant was working light-duty immediately prior to her layoff was not supported by substantial evidence. However, this finding would only be critical with respect to the burden borne by Claimant on her reinstatement petition. For example, when an employee returns to work for the pre-injury employer at a light-duty job and this job is legitimately eliminated due to economic conditions resulting in the employee's layoff, then benefits for total disability must be paid to the employee in the absence of additional proof from the employer of work availability. *Klarich v. Workers' Compensation Appeal Board (RAC's Association)*, 819 A.2d 626, 629 (Pa. Cmwlth.), *appeal denied*, 831 A.2d 601 (Pa. 2003). In such a case, the employee is entitled to the presumption that his or her disability, i.e., loss of earning power, is causally related to the continuing work injury. *Id.*

On the other hand, when an employee returns to his or her pre-injury job without restrictions and is later laid off, the burden is on the employee to affirmatively establish that it is the work-related injury that is causing his or her present loss of earnings. *Id.* While the claimant still enjoys the presumption that some work-related medical injury continues, the claimant is not entitled to the presumption that his or her present disability, i.e., loss of earnings, is causally related to that work injury. *Id.*

11

However, neither burden is applicable in this case because Claimant never received wage loss benefits. Rather, Employer issued a medical-only notice of temporary compensation payable, which later converted to a medical-only NCP, for a low back injury. Claimant never missed work following her injury. She worked light-duty for approximately one week before being cleared to return to her pre-injury job without restrictions. Claimant returned to her pre-injury job and was then transferred to a job in Employer's water pump unit, where she worked for a couple of months before using her sick time and FMLA leave to visit and care for her ailing mother in Albania. Claimant was laid off before she could resume working for Employer. The proper burden to be applied by the WCJ was that of a claim petition and the WCJ should have treated Claimant's reinstatement petition as such. Indeed, the WCJ has the authority under section 413(a) of the Act, with respect to any modification, reinstatement, suspension, or termination petition before him, to "hear evidence, make findings of fact, and award or disallow compensation, in the same manner and with the same effect and subject to the same right of appeal, as if such petition were an original claim petition." 77 P.S. §773.

We addressed a similar situation in *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, ___ A.3d ___ (Pa. Cmwlth., No. 1212 C.D. 2014, filed October 26, 2015). In that case, the claimant was injured in the course and scope of his employment when he was rear-ended while driving the employer's van. The employer issued a medical only NCP describing the injury as a strain/sprain of the neck and lumbar areas. The claimant reported to work the next day but left early complaining of a headache and dizziness, and did not return to work thereafter. The claimant filed a claim petition alleging additional injuries to his head and left arm, as well as a penalty petition alleging that the employer acted improperly

12

in issuing a medical only NCP and not paying disability benefits. During hearings before a WCJ, the claimant orally amended his claim petition to a reinstatement petition because the employer had already recognized a work injury. The WCJ concluded that the claimant had proved that his work injury should include left ulnar neuropathy and ordered the NCP to be amended. However, the WCJ also concluded that the claimant failed to offer credible medical evidence that his work injury disabled him from performing his pre-injury job.

The claimant appealed to the Board, which affirmed. On appeal to this Court, the claimant argued, *inter alia*, that the WCJ erred in denying him disability benefits because the WCJ and the Board applied the wrong burden of proof. More specifically, the claimant argued that because the employer issued a medical only NCP, his benefits should have been treated as though they were in suspension status and his burden was that applicable to a reinstatement petition, where a claimant's testimony alone could support a reinstatement and the burden shifted to the employer to prove that any disability was unrelated to the work injury. We rejected this argument, first noting that "[t]he employer has the option of issuing a medical only NCP, by which it acknowledges a work injury and agrees to pay for medical expenses but does not accept liability for or agree to pay any wage loss benefits for disability." Slip op. at 10.

We further explained as follows:

> Here, Employer issued a medical only NCP, acknowledging that Claimant had sustained a non-disabling neck and lumbar strain/sprain work injury. This made Employer responsible for paying medical expenses for that injury, but nothing more. Because Claimant did not establish a loss of earning capacity resulting from the work injury accepted by Employer, there were no disability benefits to suspend or to reinstate. In short, Claimant's case has not 'advanced

13

> procedurally or in substance to the suspension/reinstatement stage.'

*Id.*, slip op. at 11 (citations omitted). In such cases, we stated that the claimant must file a claim petition and satisfy all elements necessary to support an award of benefits, including proof of a work injury resulting in disability, i.e., loss of earning power, and, unless the causal connection between an injury and disability is obvious, unequivocal medical evidence establishing this connection. *Id.*, slip op. at 10. Ultimately, we held that the claimant "had the burden of proving a disabling work injury by competent medical evidence," the burden related to a claim petition, and, hence, the WCJ and the Board applied the correct burden of proof. *Id.*, slip op. at 11.

Because the WCJ in the present case applied the wrong burden of proof, i.e., the burden relating to a reinstatement petition instead of a claim petition, a remand is further warranted to the WCJ for additional findings applying the correct burden.[7]

---

[7] The dissent would hold that once Employer filed the review petition seeking to amend the nature of Claimant's work injury from a low back injury to a left elbow injury, "it placed at issue Claimant's weekly wage loss benefits," (Slip. op. at 7), such that the filing of a formal claim petition was unnecessary. However, this result is contrary to our recent decision in *Ingrassia*. Additionally, the dissent's reliance on *Krushauskas v. Workers' Compensation Appeal Board (General Motors)*, 56 A.3d 64 (Pa. Cmwlth. 2012), *appeal denied*, 63 A.3d 1250 (Pa. 2013), for support is misplaced. *Krushauskas* stands for the proposition that a WCJ is empowered to take appropriate action based upon the evidence presented regardless of the nature of the underlying petition, so long as the other party is put on notice as to the theory of relief which is sought.

In *Krushauskas*, the only petition before the WCJ was a penalty petition filed by the claimant alleging that the employer had violated the Act by unilaterally suspending his benefits without a supplemental agreement or court order. Despite finding that the employer had violated the Act, the WCJ denied the penalty petition and ordered that the claimant's compensation benefits be suspended based on a finding that the claimant had voluntarily retired from the workforce. The Board affirmed, as did this Court. We concluded that the claimant had notice that a suspension was possible since his penalty petition was premised on a unilateral suspension of his benefits, the employer's denial of the allegations of the claimant's penalty petition made it clear that the employer was seeking a continuation of that suspension, and the claimant was extensively questioned at the WCJ hearing regarding his voluntary retirement from the workforce.

**(Footnote continued on next page…)**

Accordingly, the order of the Board is reversed. The matter is remanded to the Board, with further instructions to remand to the WCJ, for further findings consistent with this opinion.

 

_____
PATRICIA A. McCULLOUGH, Judge

---

**(continued…)**

In the present case, Employer filed a review petition seeking to change the description of Claimant's injury on the medical-only NCP from low back strain to a left elbow injury. With this petition, Employer had the burden to prove that a material mistake of fact or law was made at the time the original NCP was issued. *Anderson v. Workers' Compensation Appeal Board (Pennsylvania Hospital)*, 830 A.2d 636, 641 (Pa. Cmwlth. 2003). As we noted in *Ingrassia*, a party filing a claim petition must establish that he/she sustained a disabling work injury and must present unequivocal medical evidence causally connecting that injury to his/her work. The dissent does not address the fact that Dr. Kelman, upon whom the WCJ relied in granting Claimant's reinstatement petition, could not causally connect Claimant's right forearm and shoulder tendinitis to her May 20, 2010 work injury. In light of *Ingrassia* and the differing burdens of proof with respect to review and claim petitions, a remand is warranted for the WCJ to apply the correct burden of proof.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cardone Industries, : 
        Petitioner : 
  : No. 791 C.D. 2015
        v. : 
  : 
Workers' Compensation Appeal : 
Board (Tiko), : 
        Respondent : 

## ***ORDER***

AND NOW, this 8th day of February, 2016, the order of the Workers' Compensation Appeal Board (Board), dated April 13, 2015, is hereby reversed. The matter is remanded to the Board, with further instructions to remand to the Workers' Compensation Judge, for further findings consistent with this opinion.

    Jurisdiction relinquished.

 

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cardone Industries,                   :
                    Petitioner        :
                                      :
            v.                        : No. 791 C.D. 2015
                                      : Submitted:  October 30, 2015
Workers' Compensation Appeal          :
Board (Tiko),                         :
                    Respondent        :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


DISSENTING OPINION BY
PRESIDENT JUDGE PELLEGRINI                    FILED: February 8, 2016


        The central issue in this case is whether there was substantial evidence to support the WCJ's finding that Claimant suffered a work-related injury to her right forearm and shoulder.  Employer contends that she did not injure her right shoulder but her left arm and shoulder.  The WCJ found that she suffered "right sided" injuries and granted benefits.  The majority reverses, finding that the WCJ's decision was not reasoned because the WCJ did not address why he rejected certain work and medical reports that listed left-sided injuries, was not supported by substantial evidence, and erroneously reinstated benefits because the WCJ improperly treated the claim petition as a reinstatement petition.  The majority then remands the matter to the WCJ to

make new findings. Because I disagree with all of those conclusions, I respectfully dissent.

There is no dispute that Claimant was injured at work; the only issue is whether Claimant's injury was to her right forearm and shoulder as she contends or to her left arm and shoulder as Employer contends. Claimant, an immigrant from Albania, does not speak English and most interactions with Employer concerning the nature of Claimant's injuries were done through an interpreter. Employer employs Martin Katro as a "Chaplain" who acts as an interpreter. He is a distant cousin of Claimant.

Claimant initially worked for Employer on a water pump assembly line but later was transferred to a "caliper" assembly line, which involved much heavier work. While working on that line, she incurred the injuries that are the subject of this dispute. Employer issued a medical only NCP recognizing a "low back sprain." Because Claimant was transferred back to the water pump line in a light-duty capacity, she did not lose any wages. After she was laid off, she applied for reinstatement of benefits because work was not available.

Employer then filed a review petition seeking to change the description of the injury from low back sprain to a left elbow injury. Employer asserted that initial acceptance of the low back sprain was a typographical error because the medical record reflects Claimant reported a left elbow injury. It was that petition that placed at issue Claimant's work-related injuries. Contemporaneously with its review

petition, Employer also filed a termination petition, contending that Claimant had fully recovered from her left elbow injury.

Before the WCJ, Claimant testified, again through an interpreter, that she never reported or received treatment for pain in her left arm/shoulder and that her pain was in her right arm/shoulder. She also presented the deposition of a co-worker who testified that Claimant was complaining of pain in her right arm. Claimant presented medical testimony that confirmed injuries to her right side which were directly related to her work.

Employer presented the testimony of Delmalyn LaBrake, an occupational health nurse, who testified how the injury was reported to her. She did not testify that she ever treated Claimant. Instead, Ms. LaBrake testified that left sided injuries were reported to her when she filled out the forms, but she was unsure whether Claimant had the assistance of Chaplain Katro when her injuries were reported. Chaplain Katro testified that he recalled that her injuries were to her left side.

Employer also presented the testimony of Todd Marc Kelman, D.O. (Dr. Kelman), a board certified orthopedic surgeon. He testified that Claimant had fully recovered from her left arm injury (not surprisingly, as Claimant does not claim injury to her left side) but that she had right forearm and shoulder tendonitis and lumbar low back pain. He stated that his notes also contained a 15 page treatment summary from Dr. Meers, a chiropractor, whose reports referred to right side symptoms. He released Claimant to sedentary work only and reported that he ordered

her to refrain from lifting beyond ten pounds on an occasional basis and from engaging her right arm in any repetitive, simple, firm or fine manipulation of objects. He stated that these restrictions would have prevented Claimant from working in the pre-injury and modified-duty jobs that she described to him.

The WCJ accepted Claimant's testimony that she injured her right arm and shoulder and rejected all of Employer's fact witnesses' testimony as not credible. However, while he found Claimant's medical witness not credible, the WCJ found Dr. Kelman credible. The WCJ accordingly amended the NCP to a right arm/shoulder injury and found that because Claimant could not perform her pre-injury job or light-duty job, she was entitled to benefits. Employer appealed, and the Board affirmed.

Let us take a look at each of the reasons the majority advances to reverse the decision of the WCJ and the Board.

## I.

The majority finds that the WCJ did not issue a reasoned decision because he failed to explain why he rejected and/or discredited the work and medical records referencing a left-arm injury. These records were either prepared by Ms. LaBrake or by Dr. Evelyn Balogun (Dr. Balogun), the doctor to whom Employer referred Claimant. During Dr. Balogun's treatment of Claimant, Chaplain Katro provided interpretation. Dr. Balogun did not testify, and none of the records memorialize any treatment Claimant received from her or at her direction, if any. The records were prepared on May 20, 2010 and on May 25, 2010.

The records dated May 20, 2010 include the following:

- Employer's occupational health services form that Ms. LaBrake completed, listing Claimant's injury as left shoulder, left elbow, and left and long ring fingers.

- Employer's clinic authorization form given to Claimant to take to her medical appointment at a location off of Employer's premises. Again, Ms. LaBrake completed the form. It listed the injuries as left elbow pain, left shoulder pain, and left long and ring finger pain.

- A Temple University Medical Report form signed by Dr. Evelyn Balogun, the doctor to whom Employer referred Claimant, that listed left hand, elbow, and shoulder complaints.

- A Temple University Hospital Progress Note and Work Release Status Report completed by Dr. Balogun that only listed the left arm.

- An Employee Work Status form in which Ms. LaBrake transcribed the work status in the above-mentioned documents for Dr. Balogun.

The May 25, 2010 documents include:

- A May 25, 2010 Progress Note signed by Dr. Balogun that referenced the left elbow.

- A May 25, 2010 Employer Work Status form signed by Dr. Balogun, discharging Claimant from care and releasing her to full duty. No injuries are listed on that form.

The issue regarding Employer's forms then is not what Claimant told Ms. LaBrake, because she could not speak English, but whether Chaplain Katro, who

served as an interpreter, was present and whether Ms. LaBrake filled out the forms correctly based on Chaplain Katro's statements. The question regarding the Temple Medical forms filled out by Dr. Balogun, who did not testify, is whether they were generated based on the Employer's form provided to her and, thus, whether they continued the error from the initial Employer reports.

> Regarding those forms, the WCJ found as follows:

> 11. This WCJ finds that Ms. LaBrake's testimony was not credible or persuasive on the issue of whether Claimant's complaints were right sided or left sided. This WCJ notes that Ms. LaBrake was aware that Claimant did not speak English and could not specifically remember whether or not Martin Katro was present when the medical referral forms were completed….

> 12. This WCJ finds that Mr. Katro's testimony was not credible or persuasive on the issue of whether Claimant's complaints were right sided or left sided. While Mr. Katro was present at Claimant's May 2010 medical appointments, this WCJ again notes that Ms. LaBrake could not definitively state whether or not the initiating paperwork was completed prior to his arrival at the company medical dispensary.

(Reproduced Record [R.R.] at 456a.)

Given the varying descriptions of the injury in these forms and that Employer's NCP listed the injury as only a low back sprain rather than left sided injuries, calling into question the accuracy of Employer's records in general, these two findings of fact sufficiently address why the WCJ did not accept the information contained on the forms.

## II.

The majority's holding that the WCJ's decision was not supported by substantial evidence and was internally inconsistent was based on Dr. Kelman's testimony that he could not relate this diagnosis to Claimant's May 20, 2010 work injury because Claimant's original medical records did not reference any right sided complaints. The majority then remands this matter to the WCJ to reconsider Dr. Kelman's testimony in conjunction with a review of the records. If the WCJ provides adequate reasons why he rejects those records, the majority would then appear to find that the opinion was not internally inconsistent. For the reasons set forth above, the WCJ adequately explained why he did not accept those records. As such, even under the majority's analysis, there exists substantial evidence to support the WCJ's factfinding.

## III.

The majority also finds that the WCJ applied the wrong burden of proof, i.e., the burden relating to a reinstatement petition instead of a claim petition. It then remands to the WCJ for additional findings applying the claim petition burden of proof. However, Employer never raised this issue. That is not surprising considering that if Employer's review petition seeking to change the description of the injury from low back strain to a left elbow injury had been granted, there likely would have been no dispute that Claimant was entitled to weekly wage loss benefits if the WCJ went on to find that those injuries prevented her from returning to work.

In any event, once Employer filed the review petition seeking to amend the nature of the injury, it placed at issue Claimant's weekly wage loss benefits,

making the petition tantamount to a claim petition. *See Krushauskas v. Workers' Compensation Appeal Board (General Motors)*, 56 A.3d 64 (Pa. Cmwlth. 2012), *appeal denied*, 63 A.3d 1250 (Pa. 2013). The WCJ found that Claimant sustained work-related injuries to her right side, and, as a result, could not return to her pre-injury or light-duty position, therefore awarding weekly loss benefits. Essentially, these are the same findings needed to grant a claim petition.

Accordingly for the foregoing reasons, I respectfully dissent.

_____
DAN PELLEGRINI, President Judge