IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Danette Colagreco,                          :
               Petitioner                   :
                                       :
               v.                          :  No. 788 C.D. 2019
                                       :  Submitted: September 27, 2019
Workers' Compensation Appeal Board   :
(Vanguard Group Inc.),                       :
               Respondent                :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                FILED: May 14, 2020

          Danette Colagreco (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that terminated Claimant's compensation and held that certain treatments rendered to Claimant were neither reasonable nor necessary because they were done after Claimant had totally recovered from her work injury. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ). The gravamen of Claimant's appeal is that the WCJ erred by not issuing a reasoned decision and by terminating Claimant's compensation in the absence of a termination petition. Discerning no merit to those contentions, we affirm the Board.

## Background

          Claimant worked for Vanguard Group, Inc. (Employer) as a project manager. On October 14, 2013, Claimant received a flu shot at work, which injured her right arm. Employer issued a notice of compensation payable (NCP) that described the injury as "subacromial bursitis" of the right arm "secondary to needle stick." Reproduced Record at 1a (R.R. __). Thereafter, Claimant and Employer

filed a series of petitions related to Claimant's work injury that were consolidated by the WCJ. A brief summary of each petition follows.

On September 12, 2016, Claimant filed a review petition seeking to expand the scope of her work injury as stated in the NCP. Her petition alleged that Claimant suffered chronic regional pain syndrome (CRPS) of the right upper extremity. On October 17, 2016, Employer filed a modification and suspension petition based on a "[s]pecific job offered" to Claimant. R.R. 7a.

On March 20, 2017, Claimant filed a second review petition, seeking to further correct her work injury to include CRPS Type 2; dynamic nonvascular, non-neurogenic thoracic outlet syndrome; chronic subacromial bursitis and supraspinatus tendinopathy; chronic right adhesive capsulitis; chronic pain syndrome; hypertonic upper trapezius; and restricted first rib with scapular dyskinesia.

Both of Claimant's review petitions challenged the description of Claimant's work injury that appeared in the NCP. Claimant checked the box "Incorrect description of injury" as her reason for filing her review petitions. R.R. 3a, 12a.

On April 10, 2017, Employer filed a petition for review of a determination by a utilization review organization (URO) that ketamine drip procedures, office visits and prescriptions provided to Claimant by two providers were reasonable and necessary treatment of Claimant's CRPS. On August 22, 2017, Claimant filed a penalty petition alleging that Employer refused to pay for ketamine treatments.

Claimant testified in person before the WCJ on May 8, 2017. She stated that she received the flu shot from a nurse in a clinic in Employer's building. Her

2

right arm was "really sore" after the shot, and "[w]ithin a day or two," her arm was "almost paralyzed." Notes of Testimony (N.T.), 5/8/2017, at 7; R.R. 138a. Claimant continued to work until she left for right shoulder surgery in July 2014. She had a second shoulder surgery in July 2015 and underwent several nerve blocks, which provided no relief. In October 2016, Claimant received a notice of ability to return to work and a job offer as a financial associate for Employer. Claimant did not believe she was capable of resuming work because her condition had worsened. In addition to shoulder pain, she was experiencing pain in her joints when she walked. Claimant stated that her hand had become ice cold, numb and swollen.

Claimant testified again in person on May 30, 2018, at the hearing on her penalty petition. She stated that she was suffering stabbing pain in the upper right shoulder, joint pain with any walking, pain with touch, nonstop pins and needles of the last three fingers, swelling of the forearm, and occasional fainting from the pain. She did not believe that she could return to her original job.

Claimant presented the deposition testimony of Larry Chou, M.D., who is board certified in physical medicine and rehabilitation and began treating Claimant on April 18, 2014. Another physician in Dr. Chou's practice prescribed injections and physical therapy, but these measures did not provide relief. Dr. Chou testified that he diagnosed Claimant with chronic severe right lateral shoulder pain with hypersensitivity consistent with CRPS Type 2; chronic neuropathic symptoms related to dynamic nonvascular, non-neurogenic thoracic outlet syndrome; chronic subacromial bursitis and supraspinatus tendinopathy; chronic right adhesive capsulitis; and hypertonic upper trapezius and restricted first rib with scapular dyskinesia. Dr. Chou explained that Claimant's depression and sleep problems were consistent with chronic pain syndrome.

3

Dr. Chou opined that the placement of the flu shot "could have caused the supraspinatus tendinopathy." N.T., 3/13/2017, at 31; R.R. 56a. Because of her shoulder pain, Claimant restricted her motion, thereby developing a frozen shoulder. Dr. Chou related all these diagnoses to the October 14, 2013, work injury because "one builds on the other that builds on the other." N.T. 30; R.R. 55a.

Claimant also presented the deposition testimony of Enrique Aradillas-Lopez, M.D., who is board certified in neurology. By the time he met Claimant, she had undergone two surgeries on her right shoulder. Based on Claimant's June 2016 ultrasound, which showed an enlargement of the right brachial plexus, Dr. Aradillas-Lopez opined that Claimant suffered a brachial plexus neuritis. This would explain Claimant's "radiating complaints of pain." N.T., 2/9/2018, at 20; R.R. 492a. Dr. Aradillas-Lopez also opined that Claimant's CRPS was caused by the flu shot.

In opposition to Claimant's review petitions and in support of its modification and suspension petition, Employer presented the deposition testimony of Noubar Didizian, M.D., who is board certified in orthopedic surgery, and examined Claimant on December 22, 2016. Dr. Didizian did not observe muscular atrophy, which would be expected had Claimant sustained CRPS. To the contrary, he found her right arm more muscular than the left, which showed that she was using her right arm. Claimant's reported shoulder pain from the pinch power grip testing was irrelevant because the shoulder was not involved in those tests.

Dr. Didizian testified that he reviewed three magnetic resonance imaging (MRI) studies, performed on August 27, 2014, October 16, 2014, and June 3, 2015. They did not support a diagnosis of tendonitis, labral tear or CRPS. Claimant's June 2014 bone scan was normal. Dr. Didizian reviewed the report of Dr. Beredjiklian, a board-certified orthopedic surgeon who examined Claimant in

4

November 2013. That report stated that the MRI and electromyography (EMG) studies of Claimant were negative and showed no "structural disruption to account for [Claimant's] symptomatology." R.R. 313a. Dr. Beredjiklian found no evidence of CRPS. Dr. Didizian testified CRPS would have manifested by the time of Dr. Beredjiklian's examination had there been nerve trauma, but these symptoms did not appear at that time. According to Dr. Didizian, the fact that the nerve block did not relieve Claimant's symptoms also indicated that Claimant does not have CRPS, a condition relieved by nerve blocks.

Dr. Didizian reviewed Dr. George Russell Huffman's notes on Claimant's second surgery on June 17, 2015, which did not find a neuroma. An ultrasound of June 5, 2015, also did not find a neuroma or other soft tissue abnormality. Dr. Didizian explained that the absence of a neuroma means there had been no injury to the nerve that could have developed into CRPS. Dr. Didizian found Claimant's complaints inconsistent with symptoms of CRPS. Dr. Didizian found no evidence of thoracic outlet syndrome; tendinopathy; or subacromial bursitis. Because Dr. Huffman's operative notes indicated that he was able to move the shoulder to full range of motion, Dr. Didizian rejected the possibility of adhesive capsulitis.

Employer also presented the deposition testimony of Edward Armbruster, D.O., a board-certified orthopedic surgeon, who performed an independent medical examination (IME) of Claimant on April 14, 2015, November 10, 2015, and October 24, 2016. On April 14, 2015, Dr. Armbruster found that Claimant, who had a history of right upper arm CRPS prior to her flu shot, did not presently have CRPS. Likewise, he did not find objective evidence to substantiate

5

Claimant's complaints of neuropathic pain. Dr. Armbruster released Claimant to sedentary work.

At his second IME on November 10, 2015, Dr. Armbruster noted that Claimant had been diagnosed with right shoulder bursitis and neuropathic pain. Dr. Armbruster found no present existence of CRPS. He included Claimant's subjective complaints of pain in his report "for completeness sake." N.T., 12/19/2017, at 37; R.R. 384a. Dr. Armbruster found that Claimant's bursitis, which he related to the work injury, had completely resolved. Dr. Armbruster completed an affidavit of recovery as a result of the second examination. Dr. Armbruster did the third IME on October 24, 2016. Again, he found Claimant fully recovered from bursitis.

### WCJ Decision

The WCJ discredited Claimant's testimony with respect to her symptoms, which were not corroborated by her medical experts, Dr. Chou and Dr. Aradillas-Lopez. They did not testify about Claimant's purported numbness in her hand, spasms in the front and back, or fainting spells. Crediting the testimony of Dr. Didizian and Dr. Armbruster, the WCJ found that Claimant did not have CRPS. The WCJ found Claimant fully recovered from the work-related bursitis as of November 10, 2015, the date of Dr. Armbruster's second examination, and terminated Claimant's workers' compensation benefits as of that date. The WCJ denied Claimant's review petitions; dismissed Employer's petition to modify and suspend compensation as moot; and granted Employer's petition for review of the utilization review determination with respect to the medical treatments provided to Claimant after November 10, 2015.

On appeal to the Board, Claimant asserted that the WCJ erred in *sua sponte* terminating her benefits when Employer did not file a termination petition.

6

She further argued that the WCJ's findings were not supported by the record. The Board affirmed the WCJ.

The Board reasoned that the credited testimony of Dr. Armbruster established that Claimant had recovered from the accepted work injury as of November 10, 2015. The Board held that the WCJ had the authority to terminate Claimant's benefits even though Employer had not filed a termination petition. Claimant's review petitions alleged permanent nerve damage to her shoulder as a result of the flu shot. In response, Employer's expert witnesses opined that Claimant did not sustain nerve damage and, further, that she had fully recovered from the bursitis in her shoulder that Employer had accepted as work-related. The Board concluded that because Claimant had notice and an opportunity to be heard on whether she had fully recovered from the accepted work injury as of November 10, 2015, it was not necessary for Employer to file a termination petition. Claimant then petitioned for this Court's review.[1]

## Appeal

On appeal, Claimant raises three issues. First, she argues that the Board erred in affirming the WCJ's termination of her benefits because Employer did not file a termination petition. Second, she argues that the WCJ did not issue a reasoned decision because the WCJ's findings were "irreconcilably inconsistent." Claimant Brief at 13. Third, she argues that the WCJ erred in setting aside the utilization review determination that Claimant's treatments were reasonable and necessary.

---

[1] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

7

## I.

In her first issue, Claimant argues that the WCJ erred in terminating her benefits when Employer filed a suspension or modification petition. Employer counters that Claimant was on notice that her benefits could be terminated because Dr. Armbruster's IME report stated that Claimant had fully recovered from the accepted injury as of November 10, 2015. Claimant contested Dr. Armbruster's opinion by offering the deposition testimony of Dr. Chou and Dr. Aradillas-Lopez. In other words, Claimant had a full and fair opportunity to contest Employer's assertion that she had fully recovered and was able to return to work.

The general rule in workers' compensation is to "change the character of the claimant's disability, the employer must file a petition specifically requesting the relief sought." *Krushauskas v. Workers' Compensation Appeal Board (General Motors)*, 56 A.3d 64, 69 (Pa. Cmwlth. 2012). As is the case with many general rules, there are exceptions.

In *Krushauskas*, the claimant filed a penalty petition challenging employer's unilateral suspension of his compensation. At the hearing, the employer introduced evidence that the claimant had retired and withdrawn from the workforce. The WCJ suspended compensation, and the claimant argued that the WCJ exceeded his authority because employer had not filed a suspension petition. This Court concluded workers' compensation proceedings are not governed by strict pleading requirements. Relying on *Hutter v. Workmen's Compensation Appeal Board (Pittsburgh Aluminum Co.)*, 665 A.2d 554 (Pa. Cmwlth. 1995), and *Frontini v. Workers' Compensation Appeal Board (Parks Moving & Storage)*, 702 A.2d 8 (Pa. Cmwlth. 1997), this Court further stated:

> [A] WCJ has authority to suspend/terminate a claimant's benefits *in the absence of a formal petition where doing so would not be*

8

> *prejudicial to the claimant, i.e., the claimant is put on notice that a suspension/termination is possible and is given the opportunity to defend against it.* Whether the claimant has adequate notice depends on the totality of the circumstances of a particular case. This includes the procedural history, the factual history, the nature of the claimant's petition, and the nature of the employer's response to the claimant's petition.

*Krushauskas*, 56 A.3d at 71 (emphasis added). In its response to the claimant's penalty petition, the employer stated that the claimant had voluntarily withdrawn from the workforce. Stated otherwise, "it was abundantly clear" that the claimant's voluntary retirement from the workforce could result in a suspension of compensation. *Id*. at 72.

*Hutter*, 665 A.2d 554, and *Frontini*, 702 A.2d 8, are also instructive. In each case, the claimant filed a petition to set aside a final receipt. The WCJ granted the claimant's petition, finding that the claimant had not fully recovered at the time the final receipt was signed but had fully recovered as of a later date. The WCJ terminated the claimant's benefits as of the later date. This Court upheld the termination even though the employer had not filed a termination petition. In each case, the employer's medical expert had opined that the claimant was no longer injured as of the date of the examination. This put the claimant on notice that termination was a possibility.

In determining whether a claimant has adequate notice, the petition before the WCJ must generally raise an issue of the claimant's recovery or a similar inquiry, such as the extent of the claimant's disability. In *Krushauskas*, the issue of the claimant's disability was brought before the WCJ through the filing of a penalty petition. In *Hutter* and *Frontini*, the petition to set aside a final receipt concerned whether the claimant had fully recovered from the work-related injury.

9

By contrast, in *McQuilken v. Workers' Compensation Appeal Board (Prudential)*, 770 A.2d 376 (Pa. Cmwlth. 2001), this Court vacated the Board's adjudication that affirmed the WCJ's termination of compensation without a petition. There, the employer had filed a modification petition, alleging that the claimant was capable of returning to work. The employer's medical expert testified that the claimant had fully recovered from the work injury described in the NCP and, thus, could return to her job. On that basis, the WCJ found the claimant fully recovered from the work injury and terminated the claimant's benefits. On appeal, this Court held that the WCJ erred because the claimant did not have adequate notice of this outcome. We explained as follows:

> Unlike a Petition to Set Aside Final Receipt [in *Frontini* and *Hutter*], the question of whether a claimant has fully recovered is not before a WCJ in a Modification/Suspension Petition. *Rather, the only issue before the WCJ is whether the claimant is capable of returning to available gainful employment.* Because of the inherent differences between a Petition to Set Aside Final Receipt and a Modification/Suspension Petition, we decline to extend our holdings in *Frontini* and *Hutter* to this case. *Consequently, in order for a termination to be proper absent the filing of a Termination Petition, the issue of a claimant's full recovery or the extent of his disability must already be at issue before the WCJ.*

*McQuilken*, 770 A.2d at 379 (emphasis added).

Claimant relies on *McQuilken* noting that Employer filed a modification petition based on its job offer. *McQuilken* is inapposite. The issue of Claimant's recovery and extent of her disability were "before the WCJ." *Id.*

Dr. Ambruster issued an affidavit of Claimant's full recovery as of November 10, 2015. In response, Claimant filed two review petitions to "correct" the description of the work injury in the NCP to add CRPS and other medical

conditions. In *Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 872 A.2d 159, 169 (Pa. 2005), *overruled on other grounds by Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577 (Pa. 2009), the Supreme Court held that where a claimant files a review petition to correct the accepted work injury, the review petition functions as a claim petition, making the duration and extent of the work injury an issue.[2]

Claimant did not have to prove that she sustained a compensable injury in the form of subacromial bursitis in her shoulder, which was already accepted in the NCP. However, by filing two review petitions to correct the NCP to add new injuries she sustained to her shoulder on October 14, 2013, Claimant took on the burden of proving that her work injury was not solely subacromial bursitis but also CRPS. She had to prove that the medical conditions listed in her review petitions existed as of the date of her injury and continued throughout the review petition proceeding. In defending against Claimant's review petition, Employer's experts evaluated Claimant's physical condition and concluded that she did not have CRPS or permanent nerve damage. They also concluded that she was fully recovered from the subacromial bursitis. Employer was free to submit this evidence, and the WCJ was free to consider this evidence. Indeed, Claimant did not object to Employer's expert evidence on relevancy grounds.

---

[2] The concurrence characterizes the majority holding as requiring every claimant to prove that the recognized work injury continues whenever she files a review petition. We disagree with that characterization. The majority's holding is limited to the facts of this case, where Claimant was on notice that Employer believed that she was fully recovered from her accepted work injury. We agree with the concurrence that the mere filing of a review petition should not "impute notice to a claimant" that the work injury previously accepted by the employer is also an issue. Concurring op. at 7. However, our holding today does not stand for that proposition.

11

Dr. Armbruster performed three IMEs on Claimant. He completed an affidavit of recovery after his second examination on November 10, 2015, almost a year before Claimant filed her first review petition. This affidavit was followed by his sworn testimony that Claimant had fully recovered from her subacromial bursitis as of November 10, 2015. Claimant contested this evidence by offering the medical opinions of Dr. Chou and Dr. Aradillas-Lopez. Specifically, Dr. Chou testified:

> [Counsel:] Now, having reviewed Dr. Armbruster's IME reports, do you agree or disagree with his opinions that [Claimant]'s fully recovered from the orthopedic effects of this injury?
>
> [Dr. Chou:] I disagree.

N.T., 3/13/2017, at 32; R.R. 57a. Likewise, Dr. Aradillas-Lopez testified:

> [Counsel:] At page 51 of Dr. Armbruster's deposition, he gave an opinion that he believes [Claimant] had fully recovered from the injury. Do you agree with that?
>
> [Dr. Aradillas-Lopez:] I disagree.

N.T., 2/9/2018, at 47; R.R. 519a. In short, Claimant fully defended against Employer's evidence that she had fully recovered from her accepted work injury of subacromial bursitis.

The nature and extent of Claimant's work injury was presented to the WCJ. We agree with the Board that Claimant received adequate notice that her recovery from her work injury was at issue and had a full and fair opportunity to defend. We hold that the Board did not err in affirming the WCJ's termination of benefits even though Employer had not filed a termination petition.

12

## II.

In her second issue, Claimant argues that the WCJ's decision was not reasoned. More specifically, Claimant challenges the WCJ's reliance on the testimony of Dr. Armbruster and Dr. Didizian to find that she had fully recovered. Further, she argues that the testimony of Dr. Armbruster and Dr. Didizian did not support the WCJ's decision to deny her review petitions.

"An employer seeking to terminate workers' compensation benefits bears the burden of proving either that the employee's disability has ceased, or that any current disability arises from a cause unrelated to the employee's work injury." *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998) (holding that termination was improper where the employer's expert did not rebut the claimant's credible complaints of ongoing pain and fatigue). Where the claimant complains of ongoing pain, there must be unequivocal medical evidence, offered within a reasonable degree of medical certainty, that "the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

Here, the NCP described Claimant's work injury as "subacromial bursitis" of the right arm "secondary to needle stick." R.R. 1a. Claimant sought to amend the NCP to add new medical conditions, such as CRPS. To that end, Claimant testified in person about her symptoms and presented the testimony of Dr. Chou and Dr. Aradillas-Lopez. However, the WCJ discredited Claimant's testimony, in part because it was not corroborated by her own experts, Dr. Chou and

13

Dr. Aradillas-Lopez. Instead, the WCJ credited the testimony of Dr. Didizian and Dr. Armbruster. The WCJ has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). A court may overturn a credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational. *Id.* at 1162.

Claimant argues that the WCJ's credibility determinations are "internally inconsistent" because Dr. Armbruster's IME reports showed right upper extremity neuropathic pain and reported a prior history of right upper extremity CRPS. Claimant Brief at 16. Dr. Armbruster explained that he included the complaint of pain and the prior history of CRPS "for completeness sake." N.T., 12/19/2017, at 37; R.R. 384a. However, he did not find any objective evidence to substantiate Claimant's complaints of pain at the time of his examinations or the presence of CRPS. Dr. Armbruster found the work injury of subacromial bursitis resolved. Likewise, Dr. Didizian testified that he found no atrophic changes on examination, which would be expected for CRPS. The testimony of Dr. Armbruster and Dr. Didizian was supported by Claimant's medical records, including the results of nerve blocks and a bone scan. Notably, Dr. Huffman's operative notes of June 17, 2015, indicated that no neuroma was found at the time of the surgery, which can develop into CRPS.

When both parties present evidence, it does not matter that there is evidence in the record that supports a factual finding contrary to that made by the WCJ; rather, the critical inquiry is whether there is evidence to support the findings

14

actually made. *Edwards v. Workers' Compensation Appeal Board (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161 (Pa. Cmwlth. 2016). The WCJ's finding that Claimant had recovered from the work-related subacromial bursitis was supported by the credible testimony of Dr. Didizian and Dr. Armbruster and the medical records. Thus, this Court cannot disturb that finding.

We reject Claimant's argument that the WCJ's decision is not reasoned.

**III.**

In her third issue, Claimant argues that the WCJ erred in granting Employer's petition to review a URO determination that ketamine drip procedures administered to Claimant were reasonable and necessary. Claimant argues that the WCJ erred in granting Employer's petition based on her finding that the treatment under review was not related to the work injury. Claimant argues that Employer cannot file a utilization review to contest "causation." Claimant Brief at 14. The single issue in a utilization review petition is the reasonableness and necessity of the treatment under review. *Warminster Fiberglass v. Workers' Compensation Appeal Board (Jorge)*, 708 A.2d 517, 520 (Pa. Cmwlth. 1998).

Here, Employer sought utilization review of, *inter alia*, the ketamine drip procedures rendered to Claimant. The URO determination found they were reasonable and necessary treatments of Claimant's CRPS. However, the WCJ found that Claimant did not have CRPS and had fully recovered from subacromial bursitis as of November 10, 2015. The treatments in question were rendered after the date of Claimant's recovery. It goes without saying that a treatment is not reasonable and necessary if it is rendered to a person whose work injury has fully resolved. *See Crozer Chester Medical Center v. Department of Labor and Industry, Bureau of Workers' Compensation, Health Care Services Review Division*, 22 A.3d 189, 195

15

(Pa. 2011) (URO determines only the reasonableness or necessity of a treatment offered for "an accepted work-related injury").

## Conclusion

For all of the foregoing reasons, we conclude that Claimant had notice that termination of her benefits was possible and had a full and fair opportunity to defend against it. We affirm the Board's decision to terminate Claimant's compensation benefits, to deny her review petitions, and to grant Employer's utilization review petition. Accordingly, we affirm the Board's June 13, 2019, adjudication.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Danette Colagreco,                          :
                    Petitioner              :
                                            :
        v.                                  :     No. 788 C.D. 2019
                                            :
Workers' Compensation Appeal Board          :
(Vanguard Group Inc.),                      :
                    Respondent              :

# **O R D E R**

AND NOW, this 14th day of May, 2020, the June 13, 2019, order of the Workers' Compensation Appeal Board, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Danette Colagreco,            :
                                     :
                  Petitioner   :
                                     :
            v.                :  No. 788 C.D. 2019
                                     :  Submitted:  September 27, 2019
Workers' Compensation Appeal   :
Board (Vanguard Group Inc.),     :
                                     :
                Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge


CONCURRING OPINION
BY JUDGE WOJCIK                          FILED:  May 14, 2020


I agree with the Majority's conclusion that the workers' compensation judge (WCJ) did not err in terminating Danette Colagreco's (Claimant) benefits in the absence of a termination petition. I write separately to emphasize that a petition for review filed under Section 413(a) of the Workers' Compensation Act (Act)[1] does not necessarily raise anew the extent of disability that is causally related to an *acknowledged* work injury. I believe the WCJ's analysis, which makes no reference to Claimant's petitions or *Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 872 A.2d 159, 169 (Pa. 2005), *overruled on other grounds by Cinram*

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §771.  In relevant part, Section 413(a) of the Act states that a WCJ "may, at any time, review and modify or set aside a notice of compensation payable [NCP] . . . upon petition filed by either party . . . or in the course of the proceedings under any petition pending before [a WCJ], if it be proved that such [NCP] . . . was in any material respect incorrect."  77 P.S. §771.

*Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577 (Pa. 2009), is sound, and, like the Workers' Compensation Appeal Board (Board), I would affirm on that basis.

Claimant was receiving benefits pursuant to a notice of compensation payable (NCP) by which Vanguard Group, Inc. (Employer) accepted liability for "subacromial bursitis" of the right arm "secondary to [a flu shot]" on October 14, 2013. Reproduced Record (R.R.) at 1a. On April 14, 2015, Edward Armbruster, D.O., examined Claimant on Employer's behalf. Dr. Armbruster conducted a second independent medical examination (IME) of Claimant on November 10, 2015. At that time, Dr. Armbruster concluded that Claimant's bursitis had completely resolved, and he issued an Affidavit of Recovery.

On September 12, 2016, Claimant filed a review petition seeking to add "chronic regional pain syndrome [(CRPS)] of the right upper extremity" to the description of the injury. R.R. at 3a. In October 2016, Employer sent Claimant a Notice of Ability to Return to Work (Notice) and an offer of a specific position with Employer. The Notice was accompanied by the Affidavit of Recovery completed by Dr. Armbruster. Also in October 2016, Employer filed a modification petition, which requested a suspension of compensation based on the specific job offered to Claimant and her failure to return to work. R.R. at 7a.

Claimant filed a second review petition on March 20, 2017, alleging additional injuries. Specifically, Claimant sought to amend the NCP to include CRPS Type 2, dynamic nonvascular, non-neurogenic thoracic outlet syndrome, supraspinatus tendinopathy, chronic right adhesive capsulitis, chronic pain syndrome, a hypertonic upper trapezius, and restricted first rib with scapular dyskinesia. R.R. at 12a-13a.

In support of her review petitions, Claimant submitted the expert testimony of Larry Chou, M.D., and Enrique Aradillas-Lopez, M.D., who opined that the additional conditions alleged therein were causally related to Claimant's flu shot. In rebuttal, and in support of its modification petition, Employer offered the deposition testimony of Noubar Didizian, M.D., and Dr. Armbruster. Dr. Didizian examined Claimant on December 22, 2016, and reviewed records of her medical treatment. He testified that upon such examination and review, he found no evidence of subacromial bursitis, supraspinatus tendonitis, thoracic outlet syndrome or CRPS.

Dr. Armbruster testified that he examined Claimant on April 14, 2015, November 10, 2015, and October 24, 2016. In relevant part, Dr. Armbruster stated that only the bursitis was related to Claimant's work injury. He found that it had resolved and issued the Affidavit of Recovery following his November 10, 2015 examination.

The WCJ credited Employer's medical experts and found:

14. Based on the testimony of Drs. Armbruster and Didizian, the Claimant was recovered from the work injury on November 10, 2015, October 24, 2016, and December 22, 2016. The record established that [Employer] sought a suspension or modification of the Claimant's workers' compensation benefits on October 17, 2016, that Dr. Chou's last examination of Claimant was on March 3, 2016, and that Dr. Aradillas-Lopez'[s] last examination of the Claimant was in May 2017. No evidence from the Claimant established the Claimant's medical condition on or about October 17, 2016, or November 10, 2015, October 24, 2016, and/or December 22, 2016[,] in repudiation of the Claimant's recovery from the work injury by one of those dates. The evidence, particularly the testimony of Dr. Armbruster, supports a termination of the Claimant's workers' compensation benefits for the work injury of October 14, 2013[,] by November 10, 2015. *The evidence established that the*

*Claimant had opportunities to refute her recovery from the work injury by November 10, 2015[,] and October 24, 2016.*

15. Based on the testimony of Drs. Armbruster and Didizian, the evidence in the record supported a termination of the Claimant's workers' compensation benefits and the *Claimant wasn't misled by the form of the filed petition by [Employer]. Based on the record, the Claimant had a full and fair opportunity to contest [Employer's] assertions about the Claimant's recovery from the work injury.*

WCJ's Findings of Fact, Nos. 14-15 (emphasis added).[2] The WCJ denied Claimant's review petitions, dismissed Employer's petition to modify/suspend benefits as moot, and ordered benefits terminated after November 10, 2015.

Claimant appealed to the Board, arguing in part that the WCJ erred in *sua sponte* terminating benefits when Employer had not filed a termination petition. The Board affirmed, explaining as follows:

A WCJ has authority to suspend or terminate a claimant's benefits, without a formal petition, where the claimant is put on notice that suspension or termination is possible and has an opportunity to defend. *Whether a party has adequate notice of an opponent's claim for relief depends on the totality of the circumstances in a particular case*, including the procedural history, factual history, the nature of the petition, and the nature of the response to the petition. *Krushauskas v. Workers' Compensation Appeal Board (General Motors)*, 56 A.3d 64 (Pa. Cmwlth. 2012). In *Krushauskas,* a WCJ denied a penalty petition filed by the claimant and suspended indemnity benefits without a petition for suspension. The court reviewed extensive precedent addressing the question of whether a WCJ has authority to grant relief which was not requested by a formal petition, and noted that the WCJ in *Krushauskas* did not terminate benefits *sua sponte* after the close of the

---

[2] The WCJ's findings include two paragraphs numbered 14 and two paragraphs numbered 15. The quoted findings are the second of each, found at the WCJ's decision pp. 21-22.

record *but rather, the claimant was extensively questioned regarding his voluntary retirement from the workforce and was given an opportunity to cross-examine the employer's witnesses and to present additional evidence.* Accordingly, the WCJ was empowered to take appropriate action based on the evidence presented. *Id.*

*In the present matter, Claimant testified that she received the reports of independent medical examinations [IME reports] by Dr. Armbruster and Dr. Didizian, along with a Notice of Ability to Return to Work.* (N.T. 5/8/17 at pp. 18-19).

Dr. Chou testified that he had reviewed the IME reports and did not agree that Claimant had fully recovered. (*Id.* at pp. 32-34). He did not agree that Claimant could return to work without restrictions because she could barely move her right arm. (*Id.* at p. 36). On cross-examination, he opined that Claimant could not return to any type of work because her pain had become all-consuming. (*Id.* at p. 66).

Dr. Aradillas-Lopez testified in rebuttal of Dr. Didizian's testimony. Among other things, he did not agree that Claimant was capable of working. (Dr. Aradillas-Lopez at p. 45). He also testified in rebuttal of Dr. Armbruster's testimony. He did not agree with Dr. Armbruster's opinion of full recovery, stating that CRPS is incurable. (*Id.* at pp. 46-47). He testified that Claimant developed CRPS from the application of a flu vaccine in her right upper extremity in October 2014, and that she had not recovered. (*Id.* at p. 48).

Upon review, we do not agree that the WCJ exceeded her authority by ordering a termination of benefits. *Claimant acknowledged that she received copies of the reports of the independent medical examiners. Claimant was thus on notice of the possibility of termination as of Dr. Armbruster's examination in November 2015.* She testified to her physical condition and her inability to return to work. Dr. Chou testified that Claimant had not fully recovered from the work injury. *Claimant had the opportunity to cross-examine Dr. Armbruster, and called*

*Dr. Aradillas-Lopez to testify. This is not, therefore, a case of unfair surprise or prejudice to Claimant. The WCJ was empowered to take appropriate action on the basis of the evidence presented.* We determine no error.

Board's opinion at 10-12 (emphasis added).

In contrast to the Majority's analysis, the Board did not focus on the petitions before the WCJ. Indeed, while the Board emphasized that the critical issue was whether Claimant had notice that the duration of her disability was at issue, the Board made no reference to Claimant's petitions. Instead, consistent with the WCJ's reasoning, the Board focused on Claimant's receipt of the IME reports apprising her that termination was possible and her opportunities to rebut Employer's medical evidence.

We have long recognized that, generally, a WCJ is empowered to grant relief that is warranted by the facts of the case. *Brehm v. Workers' Compensation Appeal Board (Hygienic Sanitation Co.)*, 782 A.2d 1077, 1081-82 (Pa. Cmwlth. 2001). This general principle does not apply in termination cases; whether termination is properly granted depends on whether a claimant has notice and an ample opportunity to prepare a defense. *Frontini v. Workers' Compensation Appeal Board (Parks Moving & Storage)*, 702 A.2d 8, 11-13 (Pa. Cmwlth. 1997).

The requirements of notice and the opportunity to defend may be satisfied in various types of situations.[3] However, I disagree that "the petition before

---

[3] Perhaps the most common instance involves a claimant who files a claim petition and is awarded benefits for a closed period, after which benefits are terminated. In that circumstance, the claimant has the burden of proving the duration of her disability, and the WCJ is free to determine the period of disability. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592 (Pa. 1993). In this case, Claimant filed a review petition pursuant to the first paragraph of Section 413(a) of the Act, seeking to correct the NCP to include injuries that she allegedly sustained on October 14, 2013, that were not listed in the NCP. Our Supreme Court has explained that where a claimant files a review petition to correct the description of the accepted work injury, the review petition functions as a claim petition. *Jeanes Hospital*, 872 A.2d at 169.

MHW - 6

the WCJ must generally raise an issue of the claimant's recovery." Majority op. at 9.

In *Krushauskas*, the Court did not hold that the issue of the claimant's full recovery was raised by the claimant's penalty petition, but, rather, by the employer's response to the allegations therein, reflecting the employer's belief that the claimant was no longer disabled. *Krushauskas,* 56 A.3d at 72. In *Hutter v. Workmen's Compensation Appeal Board (Pittsburgh Aluminum Company)*, 665 A.2d 554, 557 (Pa. Cmwlth. 1995), we did not rely on the claimant's filing of a petition to set aside. Instead, we held that the claimant had adequate notice that termination was possible because the employer provided the claimant with a deposition of its medical expert, who unequivocally opined that the claimant was no longer disabled. Similarly, in *Frontini*, we reasoned that, in its answer to the claimant's set aside petition, the employer "expressly denied that [the claimant] was not fully recovered from his work injury and denied that [the claimant] had not been released to return to work by examining physicians. . . . [The claimant] was aware that [the employer] intended to prove that [the claimant] was no longer disabled from his work-related injury." 702 A.2d at 12. In light of the above, I believe that the Majority's focus on the nature of Claimant's petitions is misplaced.

Mindful that termination is appropriate only when a claimant has notice and an opportunity to defend, I caution that the filing of a review petition is not sufficient, in itself, to impute notice to a claimant that ongoing disability related to the acknowledged work injury is at issue. Rather, I believe that under *Jeanes Hospital*, a claimant's burden under Section 413(a) is to prove that the alleged *additional or revised injuries* occurred in the course of her employment, were causally related thereto, and resulted in disability. *Pennsylvania Uninsured*

*Employers Guaranty Fund v. Workers' Compensation Appeal Board (Bonner and Fitzgerald)*, 85 A.3d 1109, 1115 (Pa. Cmwlth. 2014).

The importance of the distinction is not evident in every case. In circumstances such as these, where a claimant's review petition alleges injuries to the same body part as the NCP, the claimant necessarily places the physical condition of that body part at issue. Although Claimant did not have to re-establish a compensable injury in the nature of subacromial bursitis of the right arm, which was already accepted in the NCP,[4] her review petition sought to expand the NCP's definition of the injury to include additional injuries to her right arm. Consequently, I agree that in filing the review petitions, Claimant placed the extent of disability related to her right arm at issue.

In other instances, the claimant's review petition alleges injuries that are distinct from the acknowledged injury. For example, in *Zuvich v. Workers' Compensation Appeal Board (Department of Public Welfare/Bensalem Youth Development Center)*, 854 A.2d 702 (Pa. Cmwlth. 2004), the NCP recognized right and left upper extremity fractures, scalp and facial lacerations, and multiple contusions. The claimant's review petition alleged additional head injuries, including severe cognitive defects, concussion, memory loss, and post-traumatic headache. In *Meenan Oil Company, L.P. v. Workers' Compensation Appeal Board (Pownall)*, 846 A.2d 793 (Pa. Cmwlth. 2004), the claimant received workers' compensation medical benefits for a back injury resulting from a fall. He later sought to add carpal tunnel syndrome and bilateral trigger thumb to the accepted

---

[4] *See Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 465 A.2d 969, 972 n.6 (Pa. 1983) (stating that an NCP "amounts to an admission by the employer of the claimant's employment, the occurrence of the accident, and the nature of the injuries caused by the accident while the claimant was in the employ of the employer").

work injuries. Certainly, the review petitions filed in *Zuvich* and *Meenan Oil* did not implicate ongoing disability related to the accepted injuries.

More importantly, merely raising *the extent of the claimant's disability* is not sufficient to permit a termination of benefits. We have repeatedly held that an employer's petition asserting a decrease in the claimant's disability is not adequate notice that the employer seeks a termination. *See, e.g.*, *McQuilken v. Workers' Compensation Appeal Board (Prudential)*, 770 A.2d 376 (Pa. Cmwlth. 2001); *Frontini*; *Hutter*. Citing *Frontini* and *Hutter*, in *McQuilken* we explained that in the absence of a formal termination petition, a termination of benefits may be granted "when the claimant is notified *of an employer's intention to seek a termination*." 770 A.2d at 379 (emphasis added). In each of these cases, we emphasized that the claimant's awareness of the employer's medical evidence "clearly notified [the claimant] that [the employer] was seeking a termination." *Id.* I question whether imputing such notice to a claimant who asserts an *increase* in, or an additional basis for disability, conflicts with the rationale underlying those decisions.

The persistent theme embodied in our case law is that a termination of benefits can properly be granted in the absence of a formal termination petition so long as the claimant has notice that such relief *is being sought*. The WCJ found that Claimant received such notice, *inter alia*, in Dr. Armbruster's IME reports. I would affirm on the basis of the WCJ's determination that Claimant had ample notice and opportunity to defend against a termination in this case. *Frontini*; *Hutter*.

_____
MICHAEL H. WOJCIK, Judge
